[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT BRIDGEPORT HOSPITAL'S MOTION FOR SUMMARY JUDGMENT AS TO SECOND COUNT OF THE COMPLAINT
The plaintiffs, Robert and Elaine Prindle, have brought an CT Page 1318 action in four counts. The first count alleges medical malpractice against Dr. Robert Dogali. The second count alleges negligence on the part of Bridgeport Hospital and a failure to obtain informed consent from its patient, Robert Prindle. The third count sounds in product liability against Baxter Travenol Laboratories. The fourth count is a loss of consortium claim by the plaintiff Elaine Prindle.
The plaintiffs claim that Robert Prindle underwent surgery by Dr. Dogali for the repair of a lumbar disc on June 10, 1986 and was discharged from the hospital on June 12. He developed an infection, was readmitted to the hospital on July 10, was treated with antibiotics, and was discharged on July 19.
Sometime in 1986, Bridgeport Hospital was informed that there may have been a problem with surgical gloves manufactured by the defendant Baxter Travenol Laboratories. Bridgeport Hospital thereafter discovered that some of the gloves had holes in them and so notified the Food and Drug Administration.
The defendant Dr. Dogali wrote to Robert Prindle in March, 1987 that "Your infection appears to have been caused by defective surgical gloves which were supplied by the Travenol Corporation to Bridgeport Hospital . . . The last of the gloves were removed from Bridgeport Hospital on or about July 1, 1986."
Mark Goldberg, M.D. was disclosed by the plaintiffs as an expert witness and a testimonial deposition of Dr. Goldberg was taken.
The defendant Bridgeport Hospital has now moved for summary judgment on the second count of the complaint. The motion is based on the claim that "1) the plaintiff has failed to disclose an expert witness who will testify against said defendant as to a violation of the standard of care and as to the proximate cause issue, and 2) under the facts of this case, Bridgeport Hospital had no duty to obtain the plaintiff's informed consent."
 I.
The allegation of negligence and failure to secure informed consent against Bridgeport Hospital is found in paragraph 13 of the second count.
13. Upon information and belief, the defendant Bridgeport Hospital, through its agents, servants and/or employees failed to exercise the degree of care, competence and skill ordinarily exercised by hospitals in the State of Connecticut in one or more of the following ways:
a. It knew or should have known that the hospital's CT Page 1319 infection rate was unusually or dangerously high at the time Robert Prindle was admitted, but failed to so advise him.
b. It knew or should have known that a significant number of Dr. Dogali's patients had developed infections following surgery, but failed to so advise the plaintiff.
c. It knew or should have known that the hospital's infection rate was dangerously high, but failed to cancel non-emergency surgical procedures until the source of the increased infection rate was found.
d. It knew or should have known that a significant number of Dr. Dogali's patients had experienced post-operative infections, but failed to prevent Dr. Dogali from performing non-emergency surgical procedures until the source of the infection was located.
e. It knew or should have known that the surgical gloves which were supplied by the defendant, Baxter Travenol Laboratories, Inc. on or before April 1, 1986, had holes in them, which condition posed a serious threat of infection to the plaintiff and all other of the hospital's patients similarly situated.
f. It failed to obtain the informed consent of the plaintiff.
In support of its claim that the plaintiff had failed to provide an expert witness to testify as to the hospital's required standard of care, the defendant provided three pages from the deposition testimony of the plaintiff's expert, Dr. Mark Goldberg. From the responses, the defendant argues that his testimony did not indicate that Bridgeport Hospital breached a required standard of care, thereby leaving the plaintiffs without an expert to establish any alleged breach.
The plaintiffs cited other pages of the deposition testimony to the effect that a "standard warning" should have been given. The plaintiffs have not really addressed the standard of care issue in their memorandum in opposition to the motion; they did allege a failure to exercise ordinary care in their complaint.
Nonetheless, the plaintiffs have identified Dr. Goldberg as their expert to testify on the breach of duty. The defendant and the plaintiffs have appended different pages of deposition testimony taken from the plaintiff's testimony. The pages appear contradictory. In any event, the examination by the defendant as manifested by the submitted extracts appears to have, CT Page 1320 avoided eliciting anything, as to the hospital's standard of care. For purposes of summary judgment, the defendant has failed to carry its evidentiary burden as to the nonexistence of any material fact concerning the defendant's alleged negligence.
As the Appellate Court noted in Esposito v. Wethered,4 Conn. App. 641, 645, A.2d (1985):
 Southern argues that Sandra Esposito's disclosure under oath is conclusive on the issue of its negligence. Connecticut Practice Book Rules "provide guidelines to facilitate the discovery of information relevant to a pending suit. The primary purpose of a deposition taken pursuant to these provisions is discovery." Sanderson v. Steve Snyder Enterprises, Inc., 196 Conn. 134, 491 A.2d 389 (1985). Responses to interrogatories are not judicial admissions in contrast to admissions in a pleading or in open court. Piendosi v. Floridia, 186 Conn. 275, 278, 440 A.2d 977 (1982); Balboni v. Stonick, 2 Conn. App. 523, 529, 481 A.2d 82 (1984). A response to a question propounded in a deposition is not a judicial admission. General Statutes, Sec. 52-200. At trial, in open court, the testimony of Sandra Esposito may contradict her earlier statement and a question for the jury may then emerge.
Insofar as the motion is based on claim that the plaintiffs have failed to provide an expert witness to testify as to the standard of care, the motion is denied.
The defendant hospital argues that summary judgment should be granted with regard to the claim in paragraph 13 f of the second count that it failed to obtain informed consent because it has no duty to obtain such consent. The defendant cites the case of Petriello v. Kalman, 215 Conn. 377, 382, A.2d (1990)in support of its claim.
The Supreme Court of Connecticut in Petriello stated: "We agree that the hospital has no duty to the plaintiff regarding informed consent to the surgical procedure performed. . . ." Although a defendant's adherence to a standard of care is a factual question, the existence of a duty is a legal issue. Id. at 382-83.
The facts in Petriello are as follows. The plaintiff was 16 weeks pregnant when the defendant, Kalman, ascertained that the fetus had died. Kalman said he would perform an abortion later the same day, but failed to obtain Petriello's consent before a nurse administered to her preoperative medication. CT Page 1321 Kalman obtained Petriello's signature on the hospital consent form only after she received an injection of demerol, phenergan and atropine prescribed by an anesthesiologist. During the operative procedure, the defendant Kalman perforated the plaintiff's uterus, thereby necessitating a bowel resection. The plaintiff sued the hospital in negligence. The hospital moved for a directed verdict on the ground that there was no evidence of negligence and further that it had no duty either to obtain the plaintiff's informed consent or to ensure that the defendant physician had done so.
Regarding the hospital's duty, the court in Petriello, supra, at 384-85, found the following:
 Since, in this case, there was no evidence of any involvement by a physician employed by the hospital prior to the start of the surgical procedure and since the plaintiff does not claim it was the duty of the nurse actually to obtain the plaintiff's informed consent prior to administering the preoperative medication, the duty to obtain such consent, prior to beginning the surgical procedure, rested wholly upon Kalman, the plaintiff's attending physician.
The court further stated that the contention that a hospital has a duty to assure a patient signs the consent form
 "is unsound, however, because it equates the signing of the form with the actuality of informed consent, which it is the sole responsibility of the attending physician to obtain. . . . Significantly, we have never held that informed consent must be obtained at any specific time so long as it is obtained prior to the medical treatment under consideration. Further, we have never held that such consent must be given by the patient in writing or that a hospital, whose facilities are utilized by independent physicians, as as a kind of surety, must guarantee that informed consent is obtained prior to commencement of any surgical treatment. "Id., 5385.
Although the nurse violated hospital policy by administering medication before consent was obtained, the court noted that such violations are only evidence of negligence and "[do] not establish the applicable duty of the hospital to its patients, since `hospital rules, regulations and policies do not themselves establish the standard of care.'" [Citations omitted]. The court further stated that the hospital's rule requiring written consent "serve[d] as a directive to any employee physician" as well as "a measure for reminding independent CT Page 1322 physicians of their duty . . ." Id. at 386.
Moreover, the court in Van Steensburg v. Lawrence Memorial Hospitals, 194 Conn. 500, 506, A.2d (1984) pointed out "that hospital rules, regulations and policies do not themselves establish the standard of care."
The Petriello decision was released on June 19, 1990, and would seem to be the present rule. Although the Appellate Court had held a hospital liable on informed consent grounds in Shenefield v. Greenwich Hospital Association, 10 Conn. App. 239,522 A.2d 829 (1987), that case differs factually. The plaintiff therein alleged, inter alia, that the defendant physician performed a bilateral vasectomy, without the plaintiff's knowledge or consent. The procedure was beyond the scope of the actual consent obtained.
In upholding the plaintiff's verdict, the Appellate Court recognized that informed consent was only one of several theories presented. An additional theory was that the defendant physician failed to obtain consent while "acting as an agent of the defendant hospital." Id., at 247-48.
In Logan v. Greenwich Hospital Association, 191 Conn. 282,465 A.2d 294 (1983), the Supreme Court reviewed a judgment for the defendant physicians and a directed verdict for the defendant hospital. Plaintiff had sought damages for medical malpractice, alleging that her physician failed to discuss the possibility of a more risky alternative procedure in addressing her upcoming kidney biopsy. Regarding the claim against the hospital, the court stated: "No testimony was presented to indicate that reasonably prudent hospital practice imposed any duty upon this defendant to supervise the physicians who participated in the operation in any of the respects claimed." Id., at 304. Referring to this statement from Logan, the court in Petriello said "[i]mplicitly we rejected the claim that a hospital has a duty with respect to obtaining a patient's informed consent for a surgical procedure to be performed by a nonemployee physician." Petriello, 217 Conn. at 384.
Although the court in Mather v. Griffin Hospital, 207 Conn. 125,136, 540 A.2d 666 (1985), held that a hospital may be liable under the theory of respondeat superior, that case is not relevant since it involved the negligence of an hospital employee in the delivery room not the issue of informed consent.
There is nothing in Petriello, that indicates the holding is limited to the specific facts of this case. That the Petriello court was concerned with a directed verdict, not a CT Page 1323 motion for summary judgment is of little consequence, since a ground for the directed verdict was the lack of duty to obtain informed consent. The basic issue there as here was whether hospital has a duty to obtain informed consent.
In view of both the Shenefield and Petriello decisions, a hospital would not be liable for failure to obtain informed consent unless the attending physician were an employee or agent of the hospital.
That the plaintiff offered testimony by Dr. Dogali that Mr. Callahan, a physician's assistant employed by the hospital gave the written consent form to the patient does not alter the situation any more than a nurse securing the consent form, the issue is whether Dr. Dogali was an employee or agent of the hospital and there was no evidence presented by the plaintiffs that he was.
Therefore, the motion for summary judgment on behalf of the defendant hospital with regard to the second count is denied, except as to the allegations of paragraph 13 f that it failed to obtain the informed consent of the patient, as to which claim summary judgment is granted.
NIGRO, J.